J. B. FERGUS *et al.* Appellees, *vs.* ANDREW RUSSEL *et al.*
Appellants.

*Opinion filed December 22, 1915.*

1. CONSTITUTIONAL LAW—*constitution limits the amount which members of the legislature may receive in addition to salary.* Section 21 of article 4 of the constitution expressly prohibits members of the legislature from receiving, in addition to the salary fixed by law, any "other allowance or emolument, directly or indirectly, for any purpose whatever, except the sum of $50 per session to each member, which shall be in full for postage, stationery, newspapers and all other incidental expenses and perquisites."

2. SAME—*act of 1915, for payment of mileage to members of the legislature, is invalid.* The act of 1915, appropriating money in accordance with House Joint Resolution No. 29, allowing to each member of the legislature actual mileage for twenty-one round trips from his home to the State capital at the rate of two cents a mile, is in violation of the provisions of section 21 of article 4 of the constitution expressly limiting the allowance to members for incidental expenses and prohibiting members from increasing their compensation during their terms of office.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

P. J. LUCEY, Attorney General, (LESTER H. STRAWN, A. R. ROY, HIRAM T. GILBERT, and LOGAN HAY, of counsel,) for appellants.

FAYETTE S. MUNRO, and SHELBY M. SINGLETON, (JNO. A. WATSON, and STEVENS & HERNDON, of counsel,) for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The appellee Fergus, a tax-payer and resident of Cook county, filed his bill for injunction in the circuit court of Sangamon county against appellants, James J. Brady, Auditor of Public Accounts, and Andrew Russel, State Treasurer, to restrain the Auditor from issuing and the Treasurer from paying certain warrants for mileage for members of

the house of representatives and senate of the Forty-ninth General Assembly. Later the bill was amended and Fred-erick W. Burlingham was joined as co-complainant. The original bill charged that a large number of the warrants had been issued and paid, and prayed that the Auditor and Treasurer be decreed to make restitution of the amounts so paid and for an accounting, and that the Auditor and Treasurer be perpetually enjoined from, respectively, issuing and paying any remaining warrants. By the amended bill it is only sought to restrain the issue and payment of the warrants remaining in the hands of the Auditor. The warrants in question were drawn pursuant to an act known as House Bill 882, passed by the General Assembly and approved by the Governor, appropriating the sum of $26,270.18 to pay the incidental expenses of the Forty-ninth General Assembly in accordance with House Joint Resolution No. 20, which is as follows:

"*Be it resolved by the house of representatives, the senate concurring,* That there is allowed out of the contingent expense funds to the senate and house to each member of the house and senate the actual railroad mileage of each member for twenty-one round trips from the capital of the State to and from their respective homes at the rate of two cents per mile, the same to be computed at the same mileage as now computed by the State Auditor, and the same to be approved by the speaker of the house and the president of the senate, and to be allowed for proper and necessary committee and legislative expenses of the respective members."

It is charged, among other things, that the attempted appropriation by House Bill 882 and House Joint Resolution No. 20 is unconstitutional, illegal and void, and is in violation of section 21 of article 4 of the constitution, which is as follows: "The members of the General Assembly shall receive for their services the sum of five dollars per day, during the first session held under this constitution, and ten cents for each mile necessarily traveled in going to and returning from the seat of government, to be computed by the Auditor of Public Accounts; and thereafter such compensation as shall be prescribed by law, and no other

allowance or emolument, directly or indirectly, for any pur-
pose whatever, except the sum of $50 per session to each
member, which shall be in full for postage, stationery, news-
papers and all other incidental expenses and perquisites;
but no change shall be made in the compensation of mem-
bers of the General Assembly during the term for which
they may have been elected. The pay and mileage allowed
to each member of the General Assembly shall be certified
by the speaker of their respective houses, and entered on
the journals and published at the close of each session."
The defendants to the bill answered, denying the right of
the complainants, as tax-payers, to maintain the suit, deny-
ing that they had any special, material or substantial inter-
est in the subject matter thereof, and denying that the court
had jurisdiction to award the writ of injunction to control
the defendants, as officers of the State, in the exercise of
their executive duties, the performance of which requires
the exercise of executive discretion. All of the facts al-
leged in the bill as to the passage of House Bill 882, House
Resolution No. 20 and the drawing of warrants by the
Auditor and payment by the Treasurer were admitted, and
the cause was by agreement heard upon the amended bill
and answer, and a stipulation that if deemed necessary by
the court the journals of the house and senate of the Forty-
ninth General Assembly might be consulted or referred to
or such parts of the same used in evidence as would seem
necessary and material. Upon the hearing the court entered
a decree holding that the complainants had a right to main-
tain the bill as tax-payers, that the act making the appro-
priation was unconstitutional and void, and that the de-
fendant Brady, as State Auditor, be perpetually enjoined
from thereafter drawing and issuing any of the warrants
in question, and the defendant Russel, as State Treasurer,
be perpetually enjoined thereafter from paying the same.
The defendants to the bill have appealed to this court, and
by proper assignments of error have raised the question of

the right of the complainants in the bill, as tax-payers, to maintain this suit and the validity of the appropriation in question.

The first point was raised and has been decided contrary to the contention of appellants in the case of *Fergus* v. *Russel, (ante, p. 304,)* which was a similar suit, involving other appropriations. The only rights involved in this case are those of the complainants in the bill as tax-payers and the right of the members of the General Assembly to receive the amount appropriated as mileage, and there is not the same objection to the suit as interfering with the business of the State government as in *Fergus* v. *Russel, supra,* but as that question was decided in that suit it need not be further considered here.

As to the validity of the appropriation in question, section 21 of article 4 of the constitution fixed the salary or pay of members of the General Assembly during the first session to be held after the adoption of the constitution at five dollars per day and mileage, and provided that the members should receive thereafter "such compensation as shall be prescribed by law, and no other allowance or emolument, directly or indirectly, for any purpose whatever, except the sum of $50 per session to each member, which shall be in full for postage, stationery, newspapers and all other incidental expenses and perquisites." At the first session of the General Assembly after the adoption of the constitution the pay of members was fixed the same as provided by section 21 of article 4 above set out. It has been changed at different times since. The compensation of these officers prior to the session of the Forty-ninth General Assembly was fixed by section 1 of the act entitled "An act to provide for and fix the compensation of the members of the General Assembly of the State of Illinois," approved December 6, 1907, as amended by an act approved February 8, 1909, reading as follows: "The members of the General Assembly elected in the year 1908 and hereafter elected

shall receive for the period for which members of the house of representatives of the General Assembly are elected, the sum of two thousand dollars ($2000) payable during the first regular session of the General Assembly held after the general election for members of the house of representatives and ten cents per mile for each mile necessarily traveled in going to and returning from the seat of government at each session, to be computed by the Auditor of Public Accounts, and also fifty dollars ($50) per session for each member, which shall be in full for stationery, newspapers, postage and all other incidental expenses." (Hurd's Stat. 1913, chap. 63, par. 15.) This law fixed the compensation for members of the Forty-ninth General Assembly. It is also alleged in the bill that the members of the Forty-ninth General Assembly had received and cashed warrants for ten cents a mile travel expenses incurred in going to and returning from the seat of government, but the propriety of the appropriation for these warrants is not in any manner questioned.

It is insisted by appellants that by House Joint Resolution No. 20 the appropriation in question was from the contingent expense funds of the senate and house and was "allowed for proper and necessary committee and legislative expenses of the respective members." We cannot so construe the meaning of this resolution. We do not deem it necessary to consider the question raised by appellees as to whether House Joint Resolution No. 20 was a valid enactment in connection with House Bill 882, being merely a resolution and not having been passed in the manner prescribed by the constitution for acts of the General Assembly, or the contention that the members violated their oaths in passing the resolution and appropriation. The plain and unequivocal purpose of the resolution is to allow each member of the house and senate that passed the resolution a sum of money equal to the actual railroad fare for twenty-one round trips from the capital of the State to and from their

respective homes, computed at two cents a mile for each mile so traveled. It is also true that there may have been proper and necessary committee expenses for which appropriations could have been properly made, but the words at the end of the resolution, "and to be allowed for proper and necessary committee and legislative expenses of the respective members," add nothing to the meaning and effect of the resolution. If the appropriation was for mileage for round trips of the members from their respective homes to the capital it could not be for committee expenses and could not be for necessary legislative expenses or any other purpose except travel to and from their respective homes. By section 21 of article 4 of the constitution members of the General Assembly are prohibited from receiving, in addition to such salary as may be fixed by law, "any other allowance or emolument, directly or indirectly, for any purpose whatever, except the sum of $50 per session to each member, which shall be in full for postage, stationery, newspapers and all other incidental expenses and perquisites." The salary to which the members were entitled had been fixed by law, and the language of the constitution in plain and unmistakable terms prohibits any allowance for any purpose whatever except the sum of $50, which is to be in full for all incidental expenses. The language of the provision is plain and the meaning clear and it admits of but one construction. The appropriation was contrary to the above constitutional provision and was invalid.

It is further provided in section 21 of article 4, "no change shall be made in the compensation of members of the General Assembly during the term for which they may have been elected." If the appropriation in question had not been made the members of the General Assembly would necessarily have been obliged to pay their railroad fares from their salaries or private means. The appropriation in question was, in effect, to change and increase the compensation of the members who voted such appropriation. The

reasons moving the members of the constitutional convention in adopting this provision and the one limiting all allowances and perquisites to $50, as above set out, appear from the debates and committee reports of that body, briefly, because it was charged that members of former General Assemblies had increased the pay allowed under the constitution of 1848 (two dollars a day for the first forty-two days' attendance and one dollar a day thereafter, and ten cents for each necessary mile traveled in going to and returning from the seat of government, and no more,) by appropriating what was considered a large sum for various incidental expenses, such as newspapers, postage, etc., and the intent was to prevent any increase in compensation by making appropriations under the guise of allowances. In *Foreman v. People,* 209 Ill. 567, it is said (p. 572) : "When we examine the various provisions of the constitution with reference to a change of salary during a term of office we find that no particular set of words is used to express the limitation on the power of the legislature, but that there is a well defined rule running through the whole instrument that the salary attached to any public office having a fixed term shall not be increased or diminished during that term. With reference to the legislature, section 21 of article 4 provides that 'no change shall be made in the compensation of members of the General Assembly during the term for which they may have been elected.' " Section 10 of article 10 of the constitution prescribes how the compensation of county officers shall be fixed, and provides "that the compensation of no officer shall be increased or diminished during his term of office." We have held that this provision of the constitution absolutely prohibits increasing the pay of county officers even when additional duties are imposed by law. (*Kilgore* v. *People,* 76 Ill. 548; *Broadwell* v. *People,* id. 554; *Daggett* v. *Ford County,* 99 id. 334; *Foote* v. *Lake County,* 206 id. 185.) There is no difference between the provisions of section 21 of article 4 as to increase of sal-

aries of members of the General Assembly, and the provisions of section 10 of article 10 as to increasing the compensation of county officers. The provisions are identical as to the respective officers named.

We are constrained to hold that the appropriation in question was unconstitutional and invalid, and the decree of the circuit court so holding will be affirmed.

*Decree affirmed.*