No. 26,259.

THE STATE OF KANSAS, *ex rel.* CHARLES B. GRIFFITH, as Attorney-general, etc., *Plaintiff,* v. NORTON A. TURNER, as State Auditor, etc., *Defendant.*

SYLLABUS BY THE COURT.

CONSTITUTIONAL LAW—*The Act of the Present Legislature (House bill No. 46) Which Increases the Compensation of the Lieutenant Governor and Members of the Legislature is Invalid Because It Violates Section 15 of Article 1 of the Constitution.* The act of the legislature of 1925 which provides that $5 a day expense money shall be paid to the lieutenant governor and each member of the legislature for each day of any regular or special session is invalid because it violates section 3 of article 2 of the constitution, which fixes the compensation of the members of the legislature at not more than $150 for each regular session and not more than $90 for any special session, and violates section 15 of article 1 of the constitution, which prohibits the legislature from increasing or diminishing the compensation of the officers named in that article during the period for which they shall have been elected.

Original proceeding in quo warranto. Opinion filed February 13, 1925. Judgment for plaintiff.

*Charles B. Griffith,* attorney-general, and *W. C. Ralston,* assistant attorney-general, for the plaintiff.

*James W. Finley,* of Chanute, *Benjamin F. Hegler,* of Wichita, *Douglas Hudson,* of Fort Scott, and *E. R. Sloan,* of Holton, for the defendant.

The opinion of the court was delivered by

MARSHALL, J.: In this action the plaintiff questions the validity of an act of the legislature of 1925 which provides for the payment of five dollars a day for expense money to each member of the legislature and to the lieutenant governor for each day of any regular or special session of the legislature. The act has been approved by the governor; it has been published as required by law,

and is now a part of the law of this state unless it violates some provision of the constitution.

The act is as follows:

"House Bill No. 46.

"An Act providing for the expenses of the lieutenant governor and members of the state legislature, and providing for payment thereof.

"*Be it enacted by the Legislature of the State of Kansas:*

"Section 1. The lieutenant governor and each member of the state legislature shall receive five dollars ($5) per day expense money for each day of any regular or special session of the legislature.

"Sec. 2. The auditor of state is hereby authorized to pay the expense money provided for in section 1 of this act out of any money appropriated for legislative purposes.

"Sec. 3. This act shall take effect from and after its publication in the official state paper."

The plaintiff contends that the act violates section 3 of article 2 and section 15 of article 1 of the constitution. Section 3 of article 2 reads:

"The members of the legislature shall receive as compensation for their services the sum of three dollars for each day's actual service at any regular or special session, and fifteen cents for each mile traveled by the usual route in going to and returning from the place of meeting; but such compensation shall not in the aggregate exceed the sum of two hundred and forty dollars for each member as per diem allowance for the first session held under this constitution, nor more than one hundred and fifty dollars for each session thereafter, nor more than ninety dollars for any special session."

Section 15 of article 1 reads:

"The officers mentioned in this article [§ 1, art. 1] shall, at stated times, receive for their services a compensation to be established by law, which shall neither be increased nor diminished during the period for which they shall have been elected."

Section 1 of article 1 names the lieutenant governor as one of the officers whose compensation shall not be increased nor diminished during the term for which he shall have been elected.

An examination of section 3 of article 2 of the constitution is necessary. It makes provision for the payment of expenses in going to and returning from the place at which the legislature meets. No other expenses are provided for. The principle of statutory construction, *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another), will be of some assistance in reaching a correct conclusion.

In 12 C. J. 707, this language is found:

"Under the maxim, *expressio unius est exclusio alterius,* the enumeration of certain specified things in a constitutional provision will usually be construed to exclude all things not thus enumerated; but this is a rule to be used merely in ascertaining the true meaning, and is not a rigid rule of universal application, and should never be applied to obscure the meaning or thwart the purpose of a constitutional provision."

6 R. C. L. 49 says:

"In construing a constitution, resort may be had to the well-recognized rule of construction contained in the maxim *expressio unius est exclusio alterius,* and the expression of one thing in a constitution may necessarily involve the exclusion of other things not expressed; but this rule, like all other mere rules of construction applied to ambiguous words, must yield to proof of surrounding facts and circumstances which satisfactorily demonstrates that the meaning intended by the parties was different."

If the maxim *expressio unius est exclusio alterius* applies, all personal expenses of legislators other than mileage are excluded by the constitutional provision.

All legislative expenses may be properly paid. The expenses that may be paid are not those that are incurred by a member of the legislature because he is at the capital city; they are those that are incurred by him in the performance of his duties. They are legislative expenses, not personal expenses. The distinction between expenses that are legislative and those that are personal is that legislative expenses are those that are necessary to enable the legislature to properly perform its functions, while those that are personal are those that must be incurred by a member of the legislature in order to be present at the place of meeting—expenses for his personal comfort and convenience, which have nothing to do with the performance of his duty as a member of the legislature. Personal expenses are those incurred for rooms, meals, laundry, communications with their homes, and other things of like character. Under *Bailey v. Kelly,* 70 Kan. 869, 79 Pac. 735, personal expenses cannot be paid. In that case this court said:

"The act of 1903, appropriating money for maintaining the executive residence, does not authorize the employment of any part of the sum so appropriated for the purchase of provisions to be used there. If given such construction the act would, to that extent, be in contravention of the constitutional prohibition against increasing the compensation of the governor during his term of office, and therefore void." (Syl.)

If an appropriation for living expenses for the governor increases his compensation, an appropriation intended to cover hotel expenses of the members of the legislature likewise increases their compensation.

The constitution fixes the compensation of members of the legislature at $3 per day and provides that such compensation shall not be more than $150 each for each regular session, nor more than $90 each for each special session. This compensation, fixed by the constitution, cannot be increased. Any law which in any way, either directly or indirectly, increases the compensation of any member of the legislature must be held invalid.

The constitution provides that the per diem allowance for each member shall not be more than $150 for each regular session, nor more than $90 for any special session. Stronger language to limit the amount of compensation could not have been used. The constitution could very well have left the pay of legislators to the judgment of each legislature, but that has not been done. The salary or compensation of no other officer is fixed by the constitution. Why was this provision placed in the constitution? There is but one answer—that the members of the legislature should not have the power to increase their own compensation.

Few, if any, of the members of the legislature will use as much as five dollars a day as expenses incidental to the performance of their duties. What will be done with the remainder of the five dollars a day after each member pays all expenses incident to his duties? If he keeps the money—and it is presumed that he will—it adds to his compensation; it cannot do otherwise. The constitution says $150 and no more; one dollar more violates the constitution.

In the brief of the defendant, it is said:

"It is conceded that if an appropriation were made of an amount which would be manifestly unreasonable, and would thereby actually increase the compensation of members of the legislature, it would be void."

No case has been cited holding a law invalid because it appropriated an amount of money larger than the courts thought reasonable. Probably none can be cited except where the amount appropriated has exceeded the amount authorized. It is a part of constitutional law that the legislature while acting within the constitutional field of its operation cannot be controlled by the courts. The judgment of the courts cannot be substituted for the judgment of the legislature. If the legislature desires to appropriate an excessive or unreasonable amount for constitutional purposes, the courts cannot interfere. There is no restriction in our constitution on the power of the legislature to appropriate any amount for any

public purpose, and there is no power given the courts to substitute their judgment for that of the legislature.

*The State, ex rel., v. Raine,* 49 Ohio St. 580, is directly in point. The syllabus reads:

"A statute, whatever terms it may employ, the only effect of which is to increase the salary attached to a public office, contravenes section 20 of article II of the constitution of this state, in so far as it may affect the salary of an incumbent of the office during the term he was serving when the statute was enacted."

The law there in question reads as follows:

"In counties in which, by the last federal census, the population amounted to two hundred and fifty thousand or upwards, each commissioner shall be allowed for expenses incurred by said commissioner, in the proper discharge of his duties within said county, the sum of ($1,000) one thousand dollars per annum. Said sum to be paid out of the county treasury on the warrant of the county auditor." (p. 581.)

We quote from the opinion as follows:

"The constitutionality of this statute is assailed upon the ground that it increases the salary of the county commissioners of Hamilton county during the terms for which they had been elected, and for that reason contravenes section 20 of article 2 of the constitution of 1851, which reads as follows:

" 'Sec. 20. The general assembly, in cases not provided for in this constitution, shall fix the term of office and the compensation of all officers; but no change therein shall affect the salary of any officer during his existing term, unless the office be abolished.'

"This section of the constitution, as will be observed, denies to the general assembly power to affect the 'salary' of any officer during his existing term. In terms the statute in controversy allows a thousand dollars per annum to each county commissioner for expenses incurred in the discharge of his duties within the county, the word salary not being used at all, and from this wording of the statute it is contended that it creates no increase of salary, but merely allows compensation for expenses. Constitutional guarantees would afford but slight barriers to encroachments by any of the departments of the government if the forbidden object could be accomplished by simply using a form of words that did not name it in express terms. If the effect of the statute under consideration is to increase the salary of those county commissioners who were serving current terms of office it is unconstitutional to that extent. The county commissioners of Hamilton county before the adoption of this statute were each entitled to two thousand dollars per annum and necessary traveling expenses when traveling outside of the county on official business. (83 Ohio Laws 71.) This was the full extent of the compensation allowed them by law and whatever personal expenses they should incur while discharging their official duties within the county was not a charge upon the public treasury. The act in question neither imposed new duties nor created additional expenses. It simply allowed each commissioner of Hamilton county to draw from the public treasury the sum of three thousand dollars, whereas

before the act was passed his compensation was limited to two thousand dollars. . . .

"It necessarily follows, from the view of the statute we have taken, that to the extent that it sought to affect the salaries of officers during the terms which they were serving, when it was enacted, it is unconstitutional and void."

The defendant cites *McCoy v. Handlin,* 35 S. D. 487; *State, ex rel., v. Thomason,* 142 Tenn. 527; *Kirkwood v. Soto,* 87 Cal. 394; and *Milwaukee County v. Halsey,* 149 Wis. 82. Each of these cases will be noticed.

In *McCoy v. Handlin,* 35 S. D. 487, the legislature of South Dakota had provided:

"That whenever a judge of the supreme court whose legal residence shall be at some place other than the state capital shall have changed his place of actual residence to the capital, there shall be paid to such judge in consideration of expenses incident to removal to the capital, the increased expenses of living at a place other than his legal residence, the expenses of traveling to and from such legal residence, the fixed sum of fifty dollars for each month, payable upon the certified vouchers of such judge filed in the office of the state auditor."

There payment was refused by the proper officer, and the chief justice commenced an action in his court to enforce payment of the amount appropriated. The court held the law valid. We cannot follow a decision of a court in which each member is financially interested and upholds his side of the controversy.

In *State, ex rel., v. Thomason,* 142 Tenn. 527, the legislature appropriated "$150 for stenographic work and other necessary expenses to each member of the general assembly." The constitution of Tennessee provides:

"The sum of four dollars per day, and four dollars for every twenty-five miles traveling to and from the seat of government, shall be allowed to the members of each general assembly elected after the ratification of this constitution, as a compensation for their services. But no member shall be paid for more than seventy-five days of a regular session, or for more than twenty days of any extra or called session, or for any day when absent from his seat in the legislature, unless physically unable to attend. The senators, when sitting as a court of impeachment, shall each receive four dollars per day of actual attendance."

The case was tried on an agreed statement of facts which stated that the law provided for "stenographic hire, postage, stationery, attendance upon committees other than recess committees, and for personal and living expenses." No constitutional prohibition against such a law is cited by the defendant except what is contained in the quoted language of the constitution. The court held

the law valid, but called attention to the difference between the law and the agreed statement of facts, and in effect said that if the appropriation had been for living expenses it would be held invalid. This court cannot adopt the reasoning of the supreme court of Tennessee in holding the law valid.

In *Kirkwood v. Soto,* 87 Cal. 394, a county superintendent filed his itemized claim for expenses incurred, and payment was enforced under a law authorizing their payment. There was no question about the nature of the expenses.

*Milwaukee County v. Halsey,* 149 Wis. 82, was an action by the county to recover part of the salary that had been paid to the circuit judges of that county. The law provided that they should receive more than the other circuit judges of the state, the difference to be paid by Milwaukee county. In tracing the history of legislation concerning the salaries of circuit judges in that state, a statement was made concerning $400 expenses that had been allowed to circuit judges. What was said was by way of argument and was not necessary to a decision of the question pending in the court. In the observation made by the court it was said that if the $400 was considered compensation the law would be invalid.

The cases cited by the defendant do not assist the court in reaching a conclusion in the present controversy. The other cases cited by the defendant concern the power of the legislature to provide for the payment of the expenses of an officer incurred by him in the performance of his duties as such. There is no question about that.

The act in question provides for the payment of five dollars a day expense money to the lieutenant governor. His salary is not fixed by the constitution, but section 15 of article 1 provides that his compensation shall neither be increased nor diminished during the period for which he shall have been elected. The effect of the act is to increase the compensation of the lieutenant governor during his present term of office. That cannot be done. Of course, the legislature may increase the compensation of future lieutenant governors in any way or to whatever extent may be thought best.

The act violates section 3 of article 2 and section 15 of article 1 of the constitution of this state and is therefore invalid. That part of the act providing for five dollars a day to the lieutenant governor is so connected with the remainder that no part of the act can be upheld.

Judgment for the plaintiff.