Argued December 6, 1929; affirmed February 18, 1930

JONES *v.* HOSS, Secretary of State, et al.

(285 P. 205)

176

*W. Lair Thompson* of Portland (L. T. Harris of Eugene and I. H. Van Winkle, Attorney-General, on the brief) for appellant.

*Custer E. Ross* of Salem for respondent.

BELT, J. This is a suit to enjoin the issuance and payment of certain warrants covering incidental expenses of members of the legislature. After an appropriation by legislative act (chap. 207, General Laws of Oregon for 1929) providing for the payment of the general expenses of the legislature, the following House Concurrent Resolution was passed:

"That the secretary of state is hereby authorized and directed to audit and allow, in the same manner as

other claims against the appropriation made for the payment of the expenses incurred by the thirty-fifth legislative assembly of the state of Oregon, the sum of $5 per day during said legislative session to each member of said legislative assembly for the payment of his incidental expenses. Said payment for expenses shall be in addition to and shall be considered and held separate and distinct from the per diem allowance for services and mileage of such members provided by the constitution.''

Plaintiff, a resident and taxpayer of this state, seeks to restrain payment of such warrants chiefly upon the ground that it would be in violation of section 29, article 4 of the constitution of Oregon, which, so far as material herein, provides:

''Compensation of Members. The members of the legislative assembly shall receive for their services a sum not exceeding three dollars a day, from the commencement of the session; but such pay shall not exceed in the aggregate one hundred and twenty dollars for per diem allowance for any one session. * * * They shall also receive the sum of three dollars for every twenty miles they shall travel in going to and returning from their place of meeting, on the most usual route. * * *.''

The demurrer to the complaint in effect admits the allegation that such warrants ''are not for the payment of officers, clerks, stenographers, stationery, postage, or other general and contingent expenses of said 35th regular legislative assembly, or any part thereof.'' We will assume, therefore, that payment of the personal incidental expenses of the members of the legislature is involved.

After overruling the demurrer to the complaint, the trial court, upon refusal of defendants to plead further, entered a decree declaring the above resolu-

tion unconstitutional and void, and restrained defendants from paying warrants issued pursuant thereto. Hence this appeal.

■ The precise question is: Does the constitution of this state expressly or impliedly prohibit the legislature from appropriating money to pay the personal incidental expenses of its members? We look not to see whether such power is granted but rather whether it is prohibited. A state constitution, unlike the federal, is a limitation and not a grant of power. This principle is axiomatic under our constitutional system of government. If there be no limitation of power impliedly or specifically expressed, the legislature, in the exercise of its sovereign right, may authorize such an appropriation and courts will not interfere, regardless of their opinion as to the wisdom of such legislation. To do so would be a trespass upon the rights of a coordinate branch of the government. If, however, the constitution plainly interdicts this appropriation of funds, it is the duty of the court to declare the supremacy of such basic law and to enjoin payment of the warrants.

■ In construing a constitutional provision we seek to ascertain and give effect to the intent of the framers and of the people who adopted it. Words which have no well established technical or legal signification are to be given their plain, natural and ordinary meaning. A constitution is dependent upon ratification by the people. Its language should, therefore, be considered in the sense most obvious to the common understanding of the people at the time of its adoption. It is no time to indulge in subtle or ingenious reasoning. The constitution must be viewed in the light of the spirit of the times when it was enacted. 6 R. C. L. 51. What did

those conservative pioneer citizens have in mind relative to the matter of compensating those who represented them in the legislature? Did they visualize and provide against the changed conditions in this age where the cost of living is so high? Or, was the compensation and mileage as expressed in the constitution intended as a limitation beyond which the legislature could not go?

■ Counsel concede there is a plain and specific constitutional limitation against additional compensation, but it is argued there is no limitation, express or implied, relative to expenses. The mileage of "three dollars for every twenty miles" allowed in going to and returning from the capital was in the nature of a personal expense paid directly to the legislator. Having thus enumerated this item of personal expense, we think there is a strong implication against the allowance of additional personal expenses. If the framers of the constitution intended to allow other personal expenses, such as room rental and meals, it is reasonable to assume that provision would have been made therefor. The maxim, "expressio unius est exclusio alterius," applies.

It is stated that the above rule of construction was rejected by this court in *State v. Cochran,* 55 Or. 157 (104 P. 419, 105 P. 884), as having no application to the constitution of Oregon. In that case the defendant was accused of violating the local option law of the city of St. Johns. Mr. Justice KING was author of the original opinion. On rehearing, the statute which authorized an addition of two justices to this court was attacked as being in violation of the state constitution. Mr. Justice McBRIDE, speaking for the court, in a very able opinion held that the constitution, con-

sidered in its entirety, did not expressly or impliedly limit the number of justices of the supreme court to three members. True, the rule of construction above invoked was held not applicable in the Cochran case, but certainly that affords no basis for the contention that it shall never be resorted to in the construction of other constitutional provisions. Like any other rule of construction, it is invoked only to ascertain the true meaning of the language used and is not a rigid rule of universal application. Where the meaning of words is clear and plain there is no need of resorting to any rule of construction. It remains only for the court to give 'them force and effect: 6 R. C. L. 49; 12 C. J. 707. Mr. Justice McBride, in referring to section 1 of article 7 of the constitution, providing that the judicial power of a state shall consist of a supreme court, circuit court and county court said the maxim above quoted ''applies here and the statement excludes all courts not there enumerated.'' The questions under consideration in the Cochran case and those presented in the one at bar are, indeed, wholly dissimilar. What was said there is not controlling here.

Such allowance for personal expenses is, in effect, additional compensation which the constitution expressly forbids. It seems to the writer that much ingenious reasoning is required to reach any other conclusion. If A pays B $5 per day for his services for a period of 30 days and then for the next 30 days pays him $5 per day and board, will it be argued that B's compensation has not been increased? This is a common sense view which we think would have appealed to those pioneer citizens who had to do with the making of the constitution. It is an interpretation which the legislature itself recognized from the adop-

tion of the constitution in 1859 until the passage of the first resolution for incidental expenses in 1927. Such an interpretation by the legislature extending over a period of time in excess of half a century should and does have great weight with the court.

The implied limitation against personal expenses has no application to official or legislative expenses. As said in *State ex rel. v. Turner,* 117 Kan. 755 (233 P. 510):

"All legislative expenses may be properly paid. The expenses that may be paid are not those that are incurred by a member of the legislature because he is at the capital city; they are those that are incurred by him in the performance of his duties. They are legislative expenses, not personal expenses. The distinction between expenses that are legislative and those that are personal is that legislative expenses are those that are necessary to enable the legislature to properly perform its functions, while those that are personal are those that must be incurred by a member of the legislature in order to be present at the place of meeting—expenses for his personal comfort and convenience, which have nothing to do with the performance of his duty as a member of the legislature."

The distinction between personal and legislative expenses was also recognized in *Ashton v. Ferguson,* 164 Ark. 254 (261 S. W. 624); *State v. Clausen,* 142 Wash. 450 (253 P. 805); *Dixon v. Shaw,* 122 Okla. 211 (253 P. 500, 50 A. L. R. 1232); *Peay v. Nolan,* 157 Tenn. 222 (7 S. W. (2d.) 815, 60 A. L. R. 408), and was, indeed, the turning point of these decisions.

*State ex rel. v. Turner,* supra, is squarely against the contention of appellants. In that case, under a constitution substantially the same as that of this state, the court held unconstitutional and void an act of the

legislature appropriating to each member of the legislature the sum of $5 per day expense money. The court said:

"This compensation, fixed by the constitution, cannot be increased. Any law which in any way, either directly or indirectly, increases the compensation of any member of the legislature must be held invalid."

*Dixon v. Shaw,* a well reasoned case, is in point. There is no material difference between the constitution of Oklahoma and that of Oregon, relative to the question of compensation and mileage for members of the legislature. A mandamus proceeding was instituted to compel the auditor to allow and pay certain claims of members of the legislature for expenses incurred for hotel room rent and meals. After referring to the constitutional provision similar to the one under consideration, the court stated:

"Thereby the whole compensation, personal to the members, is fixed, and we cannot sanction an addition thereto. We not only approve, but adopt, the reasoning of the supreme court of the state of Kansas, in the said case of *State ex rel. Griffith v. Turner,* as to the distinction between expenses that are legislative and amply within the authority of that body to provide and use, and those which are purely personal in their nature, and, by reason thereof are, under the * * * constitution, an allowance of a compensation other than that provided in the said section."

In support of the conclusion reached that the legislature had no authority to authorize payment of personal expenses of its members, also see: *State v. Clausen,* supra; *Ashton v. Ferguson,* supra; *Fergus v. Russell,* 270 Ill. 626 (110 N. E. 887). We appreciate the difference in the constitutional provisions in states other than Kansas and Oklahoma, but have cited cases from such jurisdictions on account of the analogy of reasoning therein.

*State ex rel. v. Thomason,* 142 Tenn. 527 (221 S. W. 491), involved the constitutionality of an appropriation to each member of the legislature of $150 "for stenographic work and other expenses." The case was submitted on an agreed statement of facts. It was stipulated that the relators during the legislative session incurred expenses "for stenographic hire, postage, stationery, attendance upon committees other than recess committees, and *for personal and living expenses,*" and that the appropriation of $150 was for the purpose of reimbursing each member for such expenses. Because of the agreement that part of the expenses were personal in nature, the validity of the appropriation was attacked. Attention was called by the court to the difference between the language of the stipulation and that of the act. The court said:

"Parties cannot agree upon the unconstitutionality of a statute, nor by their stipulations determine for the courts the judicial question as to what the action or intent of the lawmaking body is."

We take it that the validity of the appropriation was upheld because it was deemed made for legislative and not personal expenses.

However, if *State ex rel. v. Thomason,* supra, fairly supports the theory of appellants, its force and effect are largely destroyed by the later and much better reasoned case of *Peay v. Nolan,* supra. An appropriation of $750 as expenses for each member of the legislature was held unconstitutional. The court clearly distinguished between personal and legislative expenses. After referring to the constitutional provision of Tennessee relative to compensation of members of the legislature, which is substantially the same as that of Oregon, the court said:

"Constitutional provisions which expressly or by implication prohibit the increase or decrease of com-

pensation of officers are controlled by a sound public policy, and the principle upon which they rest can not be ignored, nor may their requirements be evaded. Article 2, § 23, expressly fixes the compensation of members of the General Assembly. By implication it carries a restraint against any action to the contrary (*Keith v. Funding Board,* 127 Tenn. 451, 155 S. W. 142, Ann. Cas. 1914B, 1145), hence forbids any enactment that would either directly or indirectly increase or diminish the compensation therein fixed.''

For reasons stated in *Dixon v. Shaw,* supra, we refuse to follow the supreme court of South Dakota in *Christopherson v. Reeves,* 44 S. D. 634 (184 N. W. 1015), and in the kindred cases of *McCoy v. Handlin,* 35 S. D. 487 (153 N. W. 361, L. R. A. 1915E, 858, Ann. Cas. 1917A, 1046), and *State ex rel. Payne v. Reeves,* 44 S. D. 568 (184 N. W. 993). The supreme court of Kansas, in *State ex rel. v. Turner,* supra, in language more forceful than elegant, also refused to follow *McCoy v. Handlin,* supra.

We are not unmindful that the compensation fixed by the constitution, in view of changed conditions, is wholly inadequate and tends, in our opinion, to defeat good government in that the poor man, although well qualified, is often thus precluded from rendering this important public service. However, the inadequacy of compensation is a political and not a judicial question.

The decree of the circuit court is affirmed.

McBRIDE and ROSSMAN, JJ., dissenting.