[No. 58459-1.   En Banc.   October 1, 1992.]

WASHINGTON ECONOMIC DEVELOPMENT FINANCE AUTHORITY, *Petitioner*, v. DANIEL K. GRIMM, *as Treasurer and as Secretary of the Washington Economic Development Finance Authority, Respondent.*

*Riddell, Williams, Bullitt & Walkinshaw,* by *Thomas W. Burt, Daniel S. Gottlieb,* and *Polly Kim Close,* for petitioner.

*Kenneth O. Eikenberry, Attorney General, David E. Walsh, Deputy,* and *John J. Ryan, Assistant,* for respondent.

UTTER, J. — The Washington Economic Development Finance Authority (hereafter the Authority or WEDFA) brought this original action in this court to obtain a writ of mandamus directed to State Treasurer Daniel K. Grimm, in his capacity as the Authority's secretary. It now seeks to compel Treasurer Grimm to sign a resolution allowing the issuance of bonds. The fundamental issue in this case is whether article 32 of the Washington State Constitution prohibits the issuance of these bonds. We hold that article 32 does not apply to these bonds. Therefore, a writ of mandamus is issued requiring State Treasurer, Daniel K. Grimm, to sign Resolution 91-1 so the Authority may issue these bonds.

I

BACKGROUND

In 1989 the Legislature passed the Washington economic development finance authority act, which has been codified as RCW 43.163. The Legislature, recognizing the important link between the availability of financing and economic development, created the Authority so it could develop new

ways to improve access to capital for small and medium sized businesses. RCW 43.163.005.

The legislation authorizes the Authority to issue nonrecourse revenue bonds. RCW 43.163.130. A nonrecourse bond is a bond, the repayment of which is made solely from revenue derived from the project being funded or other private sources. They are not repaid from any public funds. The legislation creating the Authority expressly provides that bonds issued by the Authority do not create an obligation for the State or its subdivisions. RCW 43.163.140(1). Proceeds of the bonds issued by the Authority are not public moneys. RCW 43.163.140(2). They are trust funds which are kept segregated from public funds. RCW 43.163.140(2); .160. The bonds at issue here conform to these statutory requirements.

The Legislature authorized the Authority to create a loan pooling program as one method of improving small businesses' access to capital. RCW 43.163.050. Under such a program, the Authority may pool loans made or guaranteed through programs administered by the federal small business or farmers home administrations. RCW 43.163.050. Pursuant to this provision, the Authority adopted Resolution 91-1, approving the issuance of bonds and for using the proceeds to purchase Small Business Administration 504 first deed of trust loans (hereafter SBA 504 loans). The Authority's loan pooling program would create a secondary market for SBA 504 loans. Resolution 91-1 authorizes $5 million in taxable revenue bonds.

Treasurer Grimm, acting as secretary of the Authority, refused to sign the resolution. RCW 43.163.020 sets forth the composition of the Authority and provides that the State Treasurer shall be a member. Pursuant to RCW 43.163.100, the Authority adopted rules on an emergency basis on August 16, 1991. Under those rules, Treasurer Grimm was designated as secretary of the Authority. Grimm refused to sign the resolution based upon advice of counsel that the Authority's issuance of taxable bonds would violate Const.

art. 32, § 1(c). The Authority's rules provide that resolutions must be signed by its secretary. *See* Agreed Statement of Facts, exhibit B; The Authority's Rules. Therefore, Treasurer Grimm's refusal to sign has prevented the issuance of these bonds. The Authority has sought, and we now grant, a writ of mandamus compelling Treasurer Grimm to sign Resolution 91-1.

## II
### MANDAMUS

Treasurer Grimm correctly notes that writs of mandamus are often only granted where a petitioner's right to relief is "a right clearly founded in or granted by law." *See State ex rel. Todd v. Yelle*, 7 Wn.2d 443, 449, 110 P.2d 162 (1941); *R/L Assocs., Inc. v. Seattle*, 61 Wn. App. 670, 811 P.2d 971, *review denied*, 117 Wn.2d 1024, 820 P.2d 510 (1991). Recently, however, in *Higher Educ. Facilities Auth. v. Gardner*, 103 Wn.2d 838, 843, 699 P.2d 1240 (1985), we did not place such a burden on a petitioner seeking a writ of mandamus to obtain signatures for resolutions authorizing the issuance of bonds.[1] Instead, we entertained a presumption of constitutionality, stating that "[A] party challenging the constitutionality of a statute must demonstrate beyond a reasonable doubt that the statute is invalid and must rebut the presumption that all legally necessary facts exist." 103 Wn.2d at 843; *see also* Spitzer, *An Analytical View of Recent "Lending of Credit" Decisions in Washington State*, 8 U. Puget Sound L. Rev. 195, 197 (1984-1985) (advocating a presumption that proposed actions by legislative bodies are constitutional and placing the burden on those challenging the constitutionality of a proposed governmental action). We need not, however, decide which party should bear the burden in this case. Under either test, we conclude that the issuance of these bonds does not violate Const. art. 32.

---

[1] The dissent has failed to show how *Higher Educ. Facilities Auth.* differs from this case. There too, the petitioners sought a writ of mandamus to compel state officials to sign specific bond resolutions. Nonetheless, in that case we did not impose the onerous burden which the dissent now urges.

## III

### ARTICLE 32 DOES NOT APPLY TO THESE BONDS BECAUSE THEY ARE NOT FOR INDUSTRIAL DEVELOPMENT

The voters adopted article 32 as an amendment to our state constitution on November 3, 1981. It provides in pertinent part:

> The legislature may enact laws authorizing the state, counties, cities, towns, port districts, or public corporations established thereby to issue nonrecourse revenue bonds or other nonrecourse revenue obligations and to apply the proceeds thereof in the manner and for the purposes heretofore or hereafter authorized by law, subject to the following limitations:
>
> . . . .
> (c) Nonrecourse revenue bonds or other nonrecourse revenue obligations issued pursuant to this section may be issued only if the issuer certifies that it reasonably believes that the interest paid on the bonds or obligations will be exempt from income taxation by the federal government.
> (d) Nonrecourse revenue bonds or other nonrecourse revenue obligations may only be used to finance industrial development projects as defined in legislation.
>
> . . . .
> . . . This section is supplemental to and shall not be construed as a repeal of or limitation on any other authority lawfully exercisable under the Constitution and laws of this state, including, among others, any existing authority to issue revenue bonds.

Const. art. 32, § 1. Treasurer Grimm argues that because these bonds are industrial development bonds within the meaning of Const. art. 32, § 1(d), they must also comply with the tax exempt requirement of Const. art. 32, § 1(c).

■ ■ Treasurer Grimm, however, erroneously concludes that the bonds at issue in this case are industrial development bonds. Article 32 does not apply to the bonds in this case for the simple reason that they are not industrial development bonds issued pursuant to RCW 39.84. In fact, the Authority does not have authority to issue industrial development bonds pursuant to RCW 39.84. Instead, it has authority to issue nonrecourse bonds pursuant to RCW 43.163. Because Const. art. 32 does not apply, these bonds need not be tax exempt.

Const. art. 32 was never meant to authorize or limit the creation of a secondary market or a loan pooling program. To interpret a constitutional amendment, we "examine the legislative history and materials in the official voters pamphlet." *Tacoma v. Taxpayers of Tacoma*, 108 Wn.2d 679, 687, 743 P.2d 793 (1987). There is nothing in the voters pamphlet or the legislative history to suggest Const. art. 32 should apply to the Authority's 504 Loan Pooling Program. Neither the Legislature nor the voters of this state contemplated this kind of program when Const. art. 32 was adopted. Const. art. 32 was meant only to apply to nonrecourse industrial development bonds issued pursuant to RCW 39.84. The bonds in this case are altogether different.

Moreover, it would require a stretch of the imagination even to characterize these nonrecourse bonds as being for industrial development. The purpose of these bonds is to improve small businesses' access to capital. The Authority has approved a resolution authorizing the issuance of bonds and the use of the proceeds of the bonds to purchase SBA 504 first deed of trust loans. It wants to create a loan pooling program authorized under RCW 43.163.050, for the purpose of facilitating small businesses' access to capital. The purpose of the WEDFA 504 Loan Pooling Program is described as:

> The 504 Loan Pooling Program has been created by the Washington Economic Development Finance Authority (the "Authority" or "WEDFA") to provide for secondary market funding of 504 first mortgages. Secondary market funding would provide non-bank capital sources for improved loan terms to borrowers, a source of liquidity for the first mortgage lenders (banks) inducing more bank participation and increasing accessibility of the program to borrowers, and greater economic development with increased activity in the SBA 504 Loan Program through the direct job creation/retention eligibility requirement of the SBA 504 Loan Program.

Agreed Statement of Facts app. F; WEDFA 504 Loan Pooling Program, at 4. In other words, the purpose is to create a secondary market to improve small businesses' access to capital. The bonds will help free up the capital of banks

holding SBA 504 first mortgages. With more capital to lend, these banks can expand their SBA 504 programs and lend more money to small businesses. In addition, the mere presence of a secondary market for SBA 504 loans will encourage more banks to lend under that program. This should create greater competition among lenders, which in turn will improve the accessibility, rates and terms for small businesses seeking capital.

Admittedly, some of the SBA 504 first mortgage loans that will be purchased under the program were originally made for projects which would fall within the definition of "industrial development facilities" provided in RCW 39.84-.020(6). Agreed Statement of Facts, at 24. However, this does not magically make these bonds industrial development bonds. Those owing money on the SBA first mortgage loans will not benefit from the loan pooling program. The true benefit of the program is the improvement of our capital markets so that small businesses can more readily obtain financing at reasonable rates and terms.

Therefore, the strictures of Const. art. 32 do not apply to these bonds. They are issued under RCW 43.163 rather than RCW 39.84. They serve a purpose not even contemplated when Const. art. 32 was adopted: the creation of a secondary market. Finally, these bonds are not being "used to finance industrial development projects". Const. art. 32, § 1(d). They are being used to create a secondary market to free up capital and encourage banks to make more SBA 504 loans.

IV
CONST. ART. 32 APPLIES ONLY TO BONDS
ISSUED UNDER RCW 39.84

■ Const. art. 32 was proposed and passed to provide an exception to the lending of credit prohibitions under Const. art. 8. At the time Const. art. 32 and its companion legislation, RCW 39.84, were passed, it was believed that non-recourse revenue bonds issued to finance industrial development projects would be a constitutionally prohibited lending of credit under *Port of Longview v. Taxpayers of Port of*

*Longview*, 85 Wn.2d 216, 225, 533 P.2d 128 (1974). See Agreed Statement of Facts, exhibit 1; Official Voters Pamphlet 13 (Nov. 3, 1981) (hereafter Voters Pamphlet). Therefore, Const. art. 32 was proposed and adopted to insure that nonrecourse industrial development bonds issued pursuant to RCW 39.84 would be valid. Its purpose was simple — to permit issuances of nonrecourse bonds that were otherwise thought to be unconstitutional.[2] By its own terms Const. art. 32 was not meant to limit any other types of bonds that could be legally issued.

Both the Voters Pamphlet and legislative history support the notion that Const. art. 32 was proposed and adopted so that its companion legislation, RCW 39.84, would not violate lending of credit prohibitions.

The Voters Pamphlet includes the text of Laws of 1981, ch. 300, later codified as RCW 39.84. Voters Pamphlet, at 19-22. It refers to RCW 39.84 as the "implementing statutes" for the amendment and states that the text of the law was included "to facilitate the voter's understanding of the effect of the adoption of that proposed amendment to the state constitution." Voters Pamphlet, at 19. In essence, Const. art. 32 and its implementing statute were presented to voters as a single package. The Voters Pamphlet also stated that such bonds were currently prohibited under the Washington State Constitution, an oblique reference to the *Port of Longview* decision. Voters Pamphlet, at 13.

In addition, the legislative history of both Substitute House Joint Resolution 7, which became Const. art. 32, and its implementing legislation, RCW 39.84, indicate the close tie between them. House Journal, 47th Legislature (1981), at 812; Senate Journal, 47th Legislature (1981), at 1355.

---

[2]We have subsequently held that properly structured issuances of nonrecourse bonds (*i.e.*, those where the State has no financial obligation) do not violate the lending of credit prohibition. *Higher Educ. Facilities Auth. v. Gardner*, 103 Wn.2d 838, 846-48, 699 P.2d 1240 (1985); *Washington State Housing Fin. Comm'n v. O'Brien*, 100 Wn.2d 491, 671 P.2d 247 (1983). Therefore, the nonrecourse bonds at issue here do not violate the state constitutional prohibitions against lending of credit.

The text of Const. art. 32 demonstrates not only the close tie between it and its implementing legislation, RCW 39.84. It also indicates any limitations were meant to apply only to bonds issued pursuant to RCW 39.84. Const. art. 32, § 1(d) provides that "Nonrecourse revenue bonds or other nonrecourse revenue obligations may only be used to finance industrial development projects as defined in legislation." Const. art. 32, § 1(d). That definition is contained, not surprisingly, in RCW 39.84.020(6). In addition, Const. art. 32 requires that the Legislature can only expand that definition if a three-fifths majority approves. This demonstrates Const. art. 32 is closely linked to RCW 39.84. Any analysis of the application of Const. art. 32 should begin by recognizing this relation.

▮ More importantly, the limitations contained in Const. art. 32, § 1(a), (b), (c) and (e) all refer to "[n]onrecourse revenue bonds . . . *issued pursuant to this section*". (Italics ours.) The phrase "bonds . . . issued pursuant to this section" means bonds issued under the authority of Const. art. 32, *i.e.,* under the implementing statute, RCW 39.84. If the limitations in Const. art. 32 were meant to apply to *any* nonrecourse bonds issued under *any* authority, as Treasurer Grimm contends, the phrase "issued pursuant to this section" would be superfluous. We have, however, consistently stated that statutes or constitutional provisions should be construed so that no clause, sentence or word shall be superfluous, void, or insignificant. *Washington Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847, 859, 774 P.2d 1199, 779 P.2d 697 (1989); *Group Health Coop. v. King Cy. Med. Soc'y*, 39 Wn.2d 586, 637, 237 P.2d 737 (1951).

Treasurer Grimm argues that Const. art. 32 not only provides an exception to the lending of credit prohibition, but also places limits on *all* industrial nonrecourse revenue bonds.[3] He argues that had the Legislature intended simply

---

[3]The dissent erroneously concludes that we have adopted the position that article 32 requires that all nonrecourse bonds be *both* industrial *and* tax exempt. Dissent, at 758. On the contrary, this is the inevitable, unsettling, result of the dissent's own reasoning.

to provide an exception to the lending of credit prohibition, it could have proposed a brief amendment. For example, Const. art. 8, § 8, which briefly provides that promotional port expenditures are not a lending of credit, was proposed and adopted in response to our holding in *State ex rel. O'Connell v. Port of Seattle*, 65 Wn.2d 801, 399 P.2d 623 (1965).

Treasurer Grimm's argument is unpersuasive for several reasons. First, it ignores the fact that Const. art. 32 was passed specifically so the legislative program contained in RCW 39.84 would not violate the prohibition against lending of credit. Given that fact, it is not surprising that elements of the statutory framework were adopted as part of the text of the constitutional amendment.

More importantly, unless we view Const. art. 32 as having the very limited function of allowing bonds to be legally issued under RCW 39.84, we would jeopardize existing bonds we have already approved. The text of Const. art. 32 places several limits on nonrecourse bonds, including that they be for industrial development and be tax exempt. Const. art. 32, § 1(c), (d). Treasurer Grimm and the dissent would have us read Const. art. 32 as requiring that all nonrecourse industrial development bonds be tax exempt. If we adopted such an approach, the converse should also be true: Const. art. 32 should require that all nonrecourse tax exempt bonds be industrial development bonds. We have, however, approved the issuance of nonrecourse tax exempt bonds which were not for industrial development. *Higher Educ. Facilities Auth. v. Gardner*, 103 Wn.2d 838, 699 P.2d 1240 (1985) (holding that tax exempt nonrecourse bonds to enable higher educational institutions to build and improve facilities did not violate lending of credit prohibitions). Thus, Treasurer Grimm and the dissent urge us to adopt a position that would either draw into question the constitutional validity of existing bonds, or create a logical inconsistency we are not prepared to accept.

Therefore, Const. art. 32 and RCW 39.84 must be viewed as a single package approved by the voters. The limitations contained in Const. art. 32 only apply to nonrecourse indus-

trial development bonds issued pursuant to RCW 39.84. In addition, the final clause of Const. art. 32, which expressly disavows any intent to repeal or limit any other authority, demonstrates the limitations of Const. art. 32 were meant to apply only to bonds issued under RCW 39.84.

## V
### THE EXPRESS DISAVOWAL OF REPEAL OR LIMITATION IN CONST. ART. 32

The final clause of Const. art. 32 reveals both its narrow scope and the fact that its limitations were meant to apply only to bonds issued pursuant to its implementing statute, RCW 39.84:

> This section is supplemental to and shall not be construed as a repeal of or limitation on any other authority lawfully exercisable under the Constitution and laws of this state, including, among others, any existing authority to issue revenue bonds.

Const. art. 32, § 1(e). The bonds in this case are being issued pursuant to "other authority". They are being issued pursuant to RCW 43.163. Because they are nonrecourse bonds (*i.e.*, the State is not financially obligated on the bonds) they need not rely on Const. art. 32 for their constitutional validity. Therefore, these bonds, issued pursuant to "other authority" should not be subject to the restrictions in Const. art. 32.

Treasurer Grimm and the dissent fail in their attempt to explain away this language. They focus unduly on the word "existing". As a result, they argue the entire clause only disavows conflict with law existing at the time of ratification. Therefore, they conclude that the restrictions in Const. art. 32 apply to all nonrecourse bonds, because we had not yet recognized their constitutional validity in *Higher Educ. Facilities Auth.* or *State Housing Fin. Comm'n v. O'Brien*, 100 Wn.2d 491, 671 P.2d 247 (1983).

■ This narrow interpretation of the final clause of Const. art. 32 is irreconcilable with its plain language. We will not construe or interpret a constitutional provision that is plain

or unambiguous. *Anderson v. Chapman*, 86 Wn.2d 189, 191, 543 P.2d 229 (1975). The plain language of the amendment disavows a "repeal of or limitation on any other authority . . . *including, among others,* any existing authority to issue revenue bonds." (Italics ours.) Const. art. 32. The language of the amendment indicates that "existing authority" is only a subset of "other authority". "[O]ther authority" must be read as authority that existed in the past, present or future. Therefore, by its own language the strictures of Const. art. 32 were not meant to apply to bonds issued under authority *other* than itself, regardless of when that authority came into being.[4]

Treasurer Grimm also emphasizes that the final clause of Const. art. 32 only disavows interference with "any other authority *lawfully exercisable*". (Italics ours.) His argument appears to be that the disavowal of repeal or limitation does not apply to these bonds because the constitutionality of certain types of nonrecourse financing was unsettled at the time Const. art. 32 was adopted. This position, however, ignores the fact that cases approving bond issuances subsequent to the adoption of Const. art. 32 did not *create* new authority. The authority already existed. We simply *recognized* that properly structured issuances would not violate the lending of credit prohibition in our state constitution. We did not create any new authority.

Treasurer Grimm dismisses the interpretation we advance, claiming that the article does not contain a "self-destruct mechanism". Brief of Respondent, at 33. Our interpretation does not make the effect of Const. art. 32 disappear. The limitations contained in Const. art. 32 still apply to industrial

---

[4]The dissent would require that all bonds, no matter what authority they are issued pursuant to, comply with the provisions of Const. art. 32. Dissent, at 760-61. This would negate the entire effect of the final clause disavowing any repeal or limitation. As noted before, we will not construe a constitutional provision in a way that makes a clause, sentence or word superfluous, void or insignificant. *Washington Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847, 859, 774 P.2d 1199, 779 P.2d 697 (1989).

development bonds issued pursuant to its implementing statute, RCW 39.84. They do not, however, apply to other types of bonds issued pursuant to other authority, as is the case here.[5]

## VI
### CONCLUSION

Const. art. 32 does not apply to the bonds the Authority wants to issue. The text of Const. art. 32, the Voters Pamphlet, and the legislative history indicate the narrow purpose of Const. art. 32. It was simply designed to avoid a perceived lending of credit problem with nonrecourse bonds. It was passed for the sole purpose of providing constitutional authority for the bond program created by its implementing statute, RCW 39.84. By its own language, Const. art. 32 states that it was not intended to limit bonds issued under *any other authority.*

The bonds at issue in this case are not issued pursuant to Const. art. 32 or its implementing statute, RCW 39.48. In fact, they are not even industrial development bonds. These bonds are designed for a very different purpose: improving small businesses' access to capital through the creation of a secondary market for SBA 504 loans. Bonds such as these were neither contemplated nor foreseen at the time of the

---

[5]An examination of our decision in *Tacoma v. Taxpayers of Tacoma*, 108 Wn.2d 679, 743 P.2d 793 (1987) is also instructive. There we upheld a Tacoma ordinance authorizing the issuance of electric revenue bonds and other funds to invest in energy conservation measures. We rejected the argument that article 8, section 10 of the Washington State Constitution and its implementing statute, RCW 35.92.360, were the sole means the State or its subdivisions could employ to promote energy conservation. Instead, we stated that Const. art. 8, § 10 and RCW 35.92.360 applied only to *loan financing* programs to promote conservation. We stated that Tacoma's effort to *reacquire* electricity differed significantly and was independently authorized under RCW 35.92.050. 108 Wn.2d at 691. Thus, we recognized municipal authorities have choices for pursuing conservation. 108 Wn.2d at 691.

Similarly, when the State ·is seeking to improve small businesses' access to capital, it should have a choice between nonrecourse industrial development bonds issued under RCW 39.48 and the creation of a loan pooling program pursuant to RCW 43.163.050. In addition, unlike Const. art. 8, § 10, which was considered in *Tacoma,* Const. art. 32 contains a clause expressly disavowing any intent to repeal or limit any other authority. Therefore, Const. art. 32 should not apply to the bonds in this case.

adoption of Const. art. 32. The restrictions in Const. art. 32 do not apply to them. Therefore, we grant the Authority's request for a writ of mandamus to compel Treasurer Grimm to sign Resolution 91-1 so that the Authority may issue these bonds.

BRACHTENBACH, DOLLIVER, SMITH, and JOHNSON, JJ., concur.

GUY, J. (dissenting) — I respectfully dissent. As a preliminary matter, I disagree with the majority's suggestion that Resolution 91-1 adopted by the Washington Economic Development Finance Authority should enjoy a presumption of constitutionality based upon *Higher Educ. Facilities Auth. v. Gardner*, 103 Wn.2d 838, 699 P.2d 1240 (1985). First, in *Higher Educ. Facilities Auth. v. Gardner, supra,* this court held that a party challenging a *statute* has the burden of overcoming the presumption of that statute's constitutionality. This case does not represent a challenge to the Authority's statutory authority under RCW 43.163. Resolution 91-1 is not a statute. The authority cited by the majority is therefore inapposite. Second, it is unnecessary to make this argument if, as the majority asserts, the Authority's resolution was actually constitutional under any standard of review.

The burden is upon the Authority, as the mandamus petitioner in this action, to demonstrate that its right to relief is "clearly founded in or granted by law." *State ex rel. Todd v. Yelle*, 7 Wn.2d 443, 449, 110 P.2d 162 (1941). The burden is *not* with respondent Grimm. Any possible ambiguities present in the language of Const. art. 32 are not sufficient to entitle the Authority to a writ of mandamus. Rather the Authority, in order to obtain the extraordinary relief it has requested, must show conclusively that its proposed financing program is not subject to the strictures of article 32 of our state constitution. Therefore, contrary to the majority's assertion, it does matter which party has the burden of proof.

752

Once the burden is properly placed with the Authority, the mandamus petitioner, it becomes evident that the Authority does not have a right clearly founded in or granted by law to issue taxable nonrecourse revenue bonds through Resolution 91-1. As a consequence, the secretary of the Authority, respondent Grimm, ought not to be compelled to sign Resolution 91-1.

I

The majority first holds that article 32 does not apply to the Resolution 91-1 bond issuance because the bonds in question are not for industrial development. In arguing that the bonds are not industrial development bonds, the majority offers what it submits is another purpose for the Authority's proposed bond issuance. The majority states that "[t]he Legislature, recognizing the important link between the availability of financing and economic development, created the Authority so it could develop new ways to *improve access to capital for small and medium sized businesses*." (Italics mine.) Majority opinion, at 739-40. Regarding the Authority's loan pooling program, the agreed statement of facts submitted by both parties to this action states that "[s]econdary market funding would provide non-bank *capital sources for improved loan terms to borrowers*". (Italics mine.) Agreed Statement of Facts exhibit F, at 4. The majority also observes that the program "will *improve the accessibility, rates and terms for small businesses seeking capital*."[6] (Italics mine.) Majority opinion, at 744. None of these purposes or effects of the loan pooling program offered by the majority are inconsistent with classifying the bonds the Authority seeks to issue as industrial development bonds. The language quoted by the majority to distinguish the Authority's

---

[6]Contrary to the above-quoted observations, the majority then asserts: "Those owing money on the SBA first mortgage loans *will not benefit* from the loan pooling program." (Italics mine.) Majority opinion, at 744. Are not "[t]hose owing money on the SBA first mortgage loans" the same persons as the "borrowers" and "businesses seeking capital" referred to by the majority? Are not the persons who receive improved accessibility, rates, and terms in seeking capital benefiting from the loan pooling program?

bonds from industrial development bonds describes objectives of promoting increased capital investment. These goals parallel the purposes stated in the implementing statute for article 32, RCW 39.84, which bears the title "Industrial Development Revenue Bonds":

> The legislature hereby finds and declares that this state urgently needs to do the following: Promote higher employment; encourage the development of new jobs; *maintain and supplement the capital investments in industry that currently exist in this state; encourage future employment by ensuring future capital investment*; attract environmentally sound industry to the state; protect and enhance the quality of natural resources and the environment; and promote the production and conservation of energy.

(Italics mine.) RCW 39.84.010. The majority's distinguishing purpose for Resolution 91-1 of fostering increased availability of capital investment sources is mutual to both the Authority's bond proposal *and* the industrial development revenue bond statutes.

The majority also states, "it would require a stretch of the imagination even to characterize these nonrecourse bonds as being for industrial development." Majority opinion, at 743. Yet notably, the majority grants later in its opinion: "Admittedly, some of the SBA 504 first mortgage loans that will be purchased under the program were originally made for projects which would fall within the definition of 'industrial development facilities' provided in RCW 39.84.020(6)." Majority opinion, at 744.

In light of this detail, it does not require great imagination to consider these bonds industrial development bonds. The Authority acknowledges that:

> Resolution No. 91-1 *requires* that the pool of loans include *at least* one Eligible Loan for a facility that would fall within the definition of "*industrial development facilities*" provided by RCW 39.84.020(6). The list of Eligible Loans (ASF, exhibit G) includes loans for projects, indicated by "manufacturing" or "manuf", that fall within that definition (ASF 24).

(Italics mine.) Brief of Petitioner, at 6 n.1. The majority acknowledges this concession yet concludes this does not "magically" make the bonds in question industrial develop-

ment bonds. Majority opinion, at 744. We agree there is no magic involved. It is simply a matter of the Authority's proposed bond issuance constituting activity that falls within a statutory definition. Under RCW 39.84.020(6), a broad range of enterprises is now included under the definition of "industrial development facilities". The Authority has proposed a nonrecourse financing scheme that includes industrial development facilities. Therefore, it seeks to issue industrial development bonds. Because industrial development bonds are involved, the financing contemplated is subject to the constitutional limitations of article 32.

Article 32 applies to all nonrecourse industrial development bonds and requires them to be tax exempt. As respondent Grimm observes, it is the Authority's coupling of industrial development projects with funding by *taxable* nonrecourse bonds that has created a conflict with the provisions of article 32 of our state constitution. There would be no conflict with article 32 if the Authority had sought to issue tax exempt bonds to fund the loan pooling project. Similarly, if the Authority had simply eliminated industrial development projects from Resolution 91-1's sale of taxable bonds, there would be no conflict with article 32.

II

The majority also holds that the limitations of article 32 apply only to bonds issued under RCW 39.84. The majority states that the sole reason for the creation and adoption of article 32 was to provide an exception to the lending of credit prohibition under Const. art. 8 so as to allow RCW 39.84 to be constitutional: "Therefore, Const. art. 32 was proposed and adopted to insure that nonrecourse industrial development bonds issued pursuant to RCW 39.84 would be valid." Majority opinion, at 745.

The position of both the petitioner and the majority that article 32 simply does not apply to the issuance proposed in Resolution 91-1 is based upon the erroneous premise that the sole purpose of article 32 was to solve the lending of

credit prohibition of *Port of Longview v. Taxpayers of Port of Longview*, 85 Wn.2d 216, 533 P.2d 128 (1974), to allow passage of RCW 39.84. In *Port of Longview*, this court held that nonrecourse revenue bond financing was a violation of article 8, sections 5 and 7 of our state constitution. The context of the proposed issuance in that case was *not* industrial development financing. Respondent Grimm acknowledges that article 32 was a response to the holding in *Port of Longview*.

However, while article 32 was intended to create an exception to article 8's lending of credit prohibitions as construed in *Port of Longview*, article 32 was intended neither to apply solely to its implementing statute, RCW 39.84, nor to apply to all nonrecourse revenue bonds. Instead, article 32 was intended to authorize the Legislature, under some specific express limitations, to allow the issuance of *industrial* revenue bonds. This purpose is manifest and readily apparent from a review of the voters pamphlet which explained to the citizens the purpose and effect of the passage of Substitute House Joint Resolution 7, the amendment to the state constitution which would become article 32. The majority correctly observes that to interpret a constitutional amendment this court turns to the official voters pamphlet. *Tacoma v. Taxpayers of Tacoma*, 108 Wn.2d 679, 687, 743 P.2d 793 (1987).

The majority, however, states that the voters pamphlet and legislative history of article 32 only support the conclusion that article 32's limitations were meant to apply solely to bonds issued pursuant to RCW 39.84. This is a narrow reading and not a sufficient foundation for granting the mandamus writ sought by the Authority. The voters pamphlet strongly evidences that the subject and scope of article 32 is *all* industrial revenue bond financing. RCW 39.84 is of course linked to article 32 as it is implementing legislation for the constitutional amendment. This relationship, how-ever, does not lead to the conclusion that article 32's requirements may not reach issuances of industrial revenue bonds proposed

outside or independent of RCW 39.84. Rather, article 32 applies to all industrial revenue bonds, including the issuance proposed by the Authority pursuant to its statutory authority under RCW 43.163.

Addressing first the voters pamphlet, the voters pamphlet for Substitute House Joint Resolution 7, which became article 32, included the following ballot title:

> Shall *industrial development bonds*, repaid by such developments, not by public funds, be authorized for issuance by public governmental entities?

(Italics mine.) Official Voters Pamphlet 12 (1981). In addition, the official explanatory statement accompanying the proposed amendment contained the following guidance:

> Some states now issue nonrecourse bonds, the proceeds of which are used for *private industrial development.* . . .
> The Washington State Constitution now prohibits the loaning or giving of credit to private persons and thus prevents the issuance of such nonrecourse tax exempt *industrial revenue bonds.*

(Italics mine.) Official Voters Pamphlet 12-13 (1981). In explaining the effect of passage of Substitute House Joint Resolution 7 as a new constitutional amendment, the pamphlet further stated:

> The legislature would be authorized to allow the state and local governments to issue *nonrecourse revenue bonds for private industrial development purposes.* Nonrecourse revenue bonds would be repayable only from funds derived *from industrial projects financed by the bonds* or other private sources and would not be repayable from public funds.

(Italics mine.) Official Voters Pamphlet 13 (1981).

The legislative history relied upon by the majority was cited in petitioner's reply brief and evidently is comprised of the remarks of individual legislators and discussion in the House. These discussions, according to the Authority, only imply that the proposed amendment and implementing bill should be read together. The suggestion that article 32 should be read with its implementing legislation does not require one to conclude that article 32 is inapplicable to the issuance of industrial revenue bonds proposed under the Authority's

statutory authority. The proposed amendment and its implementing legislation were placed together in the voters pamphlet, which evidences that article 32 applies to all industrial revenue bond financing. Thus, the legislative history offered by the Authority is not conclusive. An official report of a legislative committee would be far more important in determining the Legislature's intent than the remarks of legislators. *North Coast Air Servs., Ltd. v. Grumman Corp.*, 111 Wn.2d 315, 326, 759 P.2d 405 (1988).

Turning to RCW 39.84 itself, the text of the proposed implementing statutes for Substitute House Joint Resolution 7 was included in the voters pamphlet to facilitate voter understanding, with the explanation that the implementing statutes would become law if the voters passed the amendment. These implementing statutes, now codified in RCW 39.84, are rife with indications that the focus of article 32 is all industrial development bond financing.

Under the section entitled "Definitions", the term "Industrial development facilities" is defined to include: "manufacturing, processing, research, production, assembly, warehousing, transportation, public broadcasting, pollution control, solid waste disposal, [and] energy facilities". RCW 39.84.020(6). The rest of RCW 39.84 is largely concerned with allowing municipalities to create public corporations to achieve the purposes authorized by the chapter. Under the section of the chapter entitled "Public corporations — Creation, dissolution", it is stated: "For the purpose of facilitating economic development and employment opportunities in the state of Washington *through the financing of the project costs of industrial development facilities*, a municipality may enact an ordinance creating a public corporation for the purposes authorized in this chapter." (Italics mine.) RCW 39.84.030(1).

It bears noting that the primary focus of RCW 39.84 is the creation and regulation of public corporations created through ordinance by municipalities. This is a strong indication that article 32 is not limited in reach to RCW 39.84. According to the official explanatory statement in the voters

pamphlet, article 32 gives the Legislature authority "to allow *the state* and local governments to issue nonrecourse revenue bonds for private industrial development purposes." (Italics mine.) Official Voters Pamphlet 13 (1981). The actual text of Substitute House Joint Resolution 7, under section 1, also states that the Legislature may allow "the *state,* counties, cities, towns, port districts, *or public corporations*" to issue industrial development revenue bonds. (Italics mine.) Official Voters Pamphlet 19 (1981). This means article 32 refers to issuances of industrial revenue bonds by the state and other entities, *and* also by public corporations. RCW 39.84, meanwhile, focuses mainly on public corporations, only one type of entity the Legislature may allow to issue nonrecourse industrial revenue bonds. The Authority itself says of RCW 39.84, "[t]hat statute allows public corporations to issue 'industrial revenue bonds.' " Reply Brief of Petitioner, at 16. RCW 39.84 does not categorically exhaust or delineate the full reach of article 32. It is reasonable to conclude that the scope of article 32 may reach beyond the focus of RCW 39.84. In other words, RCW 39.84 is not a fence or border around article 32's reach or scope. The implementing statute clarifies and details the application of article 32 with respect to public corporations created by municipalities.

The majority also asserts that "unless we view Const. art. 32 as having the very limited function of allowing bonds to be legally issued under RCW 39.84, we would jeopardize existing bonds we have already approved." Majority opinion, at 747. This forecast is based on the majority's contention that article 32's language would otherwise *require* all non-recourse bonds to be *both* industrial *and* tax exempt. That is an extreme premise. What is troubling about this contention is that it contradicts the majority's other argument that the clear sole purpose for article 32 was to validate RCW 39.84 by creating an exception to article 8's lending of credit prohibitions. Article 32 cannot be at once clearly restricted in application to one statute, as the majority claims, and also pose the danger of the possible extreme interpretation

the majority fears. Even if this were so, this would suggest an ambiguity exists. An ambiguity would not favor the Authority and would instead indicate the mandamus petitioner's inability to make a clear showing.

An alternative reading of the article is possible. The answer to the majority's problem of extremes is a reasonable reading of article 32 largely ignored by the majority; that is, a proper reading under which article 32 applies to *all industrial development bonds*. Thus, all industrial development bonds would be subject to the article 32 requirements of being nonrecourse and also tax exempt.

## III

Lastly, the majority holds that under its own terms, article 32 can effect no limitation on authority to issue nonrecourse bonds issued independent of RCW 39.84. The majority states that the final clause of article 32 "expressly disavows any intent to repeal or limit any other authority" and concludes that this demonstrates that article 32's limitations were meant to apply only to bonds issued under RCW 39.84. Majority opinion, at 747-48.

Article 32 states in part:

> This section is supplemental to and shall not be construed as a repeal of or limitation on *any other authority lawfully exercisable under the Constitution* and laws of this state, *including, among others, any existing authority to issue revenue bonds*.

(Italics mine.) The Authority's position is that article 32 does not prohibit the financing proposed by the Authority because Resolution 91-1 is based upon "other authority lawfully exercisable under the Constitution and laws of this state" according to article 32. In addition, the majority also agrees with the Authority that since under article 32 "other authority lawfully exercisable" includes "among others, any existing authority to issue revenue bonds", this means that any *subsequently created authority* to issue revenue bonds must also be recognized as lawful authority to issue bonds independent of article 32. The majority argues that " 'other

authority' must be read as authority that existed in the past, present or future." Majority opinion, at 749. Since Resolution 91-1 was passed pursuant to authority created subsequent to adoption of article 32, the Authority submits article 32 cannot effect any limitation on the Authority's bond issuance. I disagree.

First the majority, at 748-49, incompletely quotes the relevant sentence of the "no repeal or limitation" clause. Article 32's limitations are not a "repeal of or limitation on any other authority *lawfully exercisable under the Constitution and laws of this state*". (Italics mine.) It begs the question to say that Resolution 91-1 is based upon other authority lawfully exercisable *under the constitution*. Grimm's position is that Resolution 91-1's validity is a function of whether it complies with article 32 of the constitution. Thus there is a real question as to whether the Authority's issuance under Resolution 91-1 of taxable nonrecourse revenue bonds does violate the state constitution.

Second, it is not so clear as the Authority suggests that article 32's "no repeal or limitation" clause prevents article 32 from applying to any subsequently created authority to issue revenue bonds. The Authority submits that

[i]f lawfully exercisable authority "includes, *among others*," any *existing* authority, then any subsequent authority to issue revenue bonds must also be included.

Reply Brief of Petitioner, at 14. Neither the law nor logic dictate that we arrive at such a conclusion. Const. art. 32, § 1 reads:

This section . . . shall not be construed as a repeal of or limitation on *any other authority* lawfully exercisable under the Constitution and laws of this state, *including, among others, any existing authority to issue revenue bonds.*

(Italics mine.) It may just as clearly be read in a different manner than that proposed by the Authority. It may be read to mean that among other authority, in the context of revenue bonds, only *existing* authority is not limited by article 32's industrial revenue bond requirements. Thus,

subsequently created authority would be subject to limitations. Since we may question whether subsequent authority to issue revenue bonds was intended to be encompassed in article 32's "no repeal or limitation" clause, the Authority does not make the difficult showing required of mandamus petitioners.

Because the Authority does not meet its substantial burden of showing entitlement to relief, and its case is based on cultivating an invalid presumption that Resolution 91-1 is constitutional, mandamus should be denied.

DORE, C.J., and ANDERSEN and DURHAM, JJ., concur with GUY, J.