[No. 60292-1.   En Banc.   March 24, 1994.]

JOHN ZACHMAN, ET AL, *Respondents*, v. WHIRLPOOL FINANCIAL CORPORATION, *Petitioner*.

*Perkins Coie,* by *Thomas L. Boeder* and *William A. Kinsel; Callaway & Howe* and *Michael D. Howe,* for petitioner.

*Davis, Arneil, Dorsey, Kight & Parlette,* by *Robert L. Parlette* and *Julie A. Anderson; Lacy, Kane & Richardson,* by *Scott M. Kane,* for respondents.

Johnson, J. — Defendant Whirlpool Financial Corporation (Whirlpool) appeals the denial of a motion to strike the order appointing Judge Thomas as judge pro tempore under article 4, section 7 (amendment 80) of the Washington State Constitution. At issue is whether a previously elected superior court judge who loses reelection is "retired" and therefore eligible to be appointed judge pro tempore without the consent of the parties in a case pending before him at the time of his electoral defeat. We hold the term "retired" includes superior court judges who have been defeated at reelection for the purpose of Const. art. 4, § 7 (amend. 80), and affirm the trial court's denial of the motion to strike the order appointing Judge Thomas.

In 1987, when this case was originally filed, Judge Thomas occupied the one superior court judge position in Okanogan County. In 1990, Judge Thomas granted Plaintiffs Zachman and Crossler (Zachman) partial summary judgment on the issue of liability, and reserved the issues of damages and class certification. Whirlpool appealed the summary judgment in this court, which was decided on November 25, 1992. *Zachman v. Whirlpool Acceptance Corp.*, 120 Wn.2d 304, 841 P.2d 27 (1992). While the appeal was still in this court, Judge Thomas was defeated in his bid for reelection by Jack Burchard.

Judge Thomas's term expired on January 11, 1993. We issued our mandate affirming summary judgment and remanded the case to the Okanogan County Superior Court on February 9, 1993. On February 16, 1993, on the court's own motion, Judge Burchard appointed Thomas as judge pro tempore in the case. In his order, Judge Burchard noted it would "be a great expense and disservice to the cause of justice and to the parties for a new judge to start over from the beginning". Clerk's Papers, at 3.

Whirlpool moved to strike the order appointing Judge Thomas as judge pro tempore on the basis he was not retired for the purpose of Const. art. 4, § 7 (amend. 80), and therefore could not sit without the consent of the parties. Clerk's Papers, at 18-33. Judge Burchard denied the motion, and

Whirlpool appealed. The Court of Appeals certified the case to this court.

The appointment of judges pro tempore is authorized by Const. art. 4, § 7 (amend. 80), which reads in pertinent part:

> A case in the superior court may be tried by a judge, pro tempore, who must be a member of the bar, agreed upon in writing by the parties litigant, or their attorneys of record, approved by the court and sworn to try the case.

Amendment 80 took effect on December 2, 1987, and added a final sentence to section 7:

> However, if a previously elected judge of the superior court retires leaving a pending case in which the judge has made discretionary rulings, the judge is entitled to hear the pending case as a judge pro tempore without any written agreement.

Prior to amendment 80, the only source of superior court judge pro tempore authority was the consent of the parties. *Burton v. Ascol*, 105 Wn.2d 344, 351-52, 715 P.2d 110 (1986). Amendment 80 dispensed with the requirement of consent and "created a new means for appointing a judge pro tempore in a very limited set of circumstances". *State v. Belgarde*, 119 Wn.2d 711, 723, 837 P.2d 599 (1992). Because Judge Thomas was "previously elected" and has "made discretionary rulings" in this case, the only circumstance at issue is whether Judge Thomas is a retired judge. Therefore, this case turns on whether the term "retired" as used in Const. art. 4, § 7 (amend. 80) includes superior court judges involuntarily retired by electoral defeat at reelection.

■ In construing constitutional language, words are given their ordinary meaning unless otherwise defined. *State ex rel. O'Connell v. Slavin*, 75 Wn.2d 554, 557, 452 P.2d 943 (1969) (citing *State ex rel. Albright v. Spokane*, 64 Wn.2d 767, 394 P.2d 231 (1964)). Whirlpool contends the common, ordinary meaning of the word "retire" is limited to voluntary retirement or retirement due to age or disability. Zachman, on the other hand, asserts the common meaning of the term "retire" is broad enough to include involuntary retirement by electoral defeat.

When the common, ordinary meaning is not readily apparent, it is appropriate to refer to the dictionary. *American Legion Post 32 v. Walla Walla*, 116 Wn.2d 1, 8, 802 P.2d 784 (1991). Webster's dictionary lists several meanings of the word "retire", including "to withdraw from office, public station, business, occupation, or active duty". *Webster's Third New International Dictionary* 1939 (1986). The dictionary also lists "to cause to retire" as the definition of the verb transitive form of the word "retire", and gives the following sentence as an illustration of the appropriate use of the word in context: "[O]nce a man is put on a committee, he stays on it . . . until the voters [retire] him". *Webster's Third New International Dictionary* 1939 (1986). Because the dictionary does not conclusively point to the definition advanced by either party, we rely on principles of statutory construction to determine which definition should be adopted. *In re Marriage of Blickenstaff*, 71 Wn. App. 489, 494, 859 P.2d 646 (1993) (citing *Rozner v. Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991)).

In interpreting a constitutional amendment, the court also examines legislative history and material in the official voters pamphlet. *Washington Economic Dev. Fin. Auth. v. Grimm*, 119 Wn.2d 738, 743, 837 P.2d 606 (1992). In addition, the court may consider extrinsic evidence of the circumstances that gave rise to the amendment. *State ex rel. PUD 1 v. Wylie*, 28 Wn.2d 113, 127, 182 P.2d 706 (1947). The interpretation adopted should be one that gives effect to the manifest purpose for which the constitutional provision was adopted. *Belgarde*, 119 Wn.2d at 724 (citing *Citizens for Financially Responsible Gov't v. Spokane*, 99 Wn.2d 339, 346, 662 P.2d 845 (1983)).

Amendment 80 evolved from the lengthy and complex water rights case *Department of Ecology v. Aquavella*, 100 Wn.2d 651, 674 P.2d 160 (1983), which was before Yakima County Superior Court Judge Walter Stauffacher. *Belgarde*, 119 Wn.2d at 723 n.6. In 1986, the litigation was already 5 years old, but still an estimated 5 or 6 years from completion. The amendment was necessary to allow Judge Stauf-

facher to complete the litigation beyond his upcoming scheduled retirement because any one of the 2,500 claimants in the case could have prevented his appointment as judge pro tempore under Const. art. 4, § 7, as it then stood. It was possible that had a new judge taken over the case, the parties would attempt to relitigate issues resolved against them by Judge Stauffacher. More importantly, a substitution of judges in the case would have been disruptive of the trial process, created significant delay, and consumed a substantial amount of limited judicial resources.

When amendment 80 was put before the Legislature and the voters of this state, the proponents of the amendment echoed Judge Stauffacher's concerns. They declared the purpose of the amendment was to avoid the expense, delay, and disruption of pending cases caused by the transition between an outgoing judge and an incoming judge, particularly in cases involving complicated and complex matters. Amendment 80 provides "an efficient and economical means of continuing a case when a judge retires". Official Voters' Pamphlet 8 (1987).

■ ■ Proponents of the amendment emphasized the judicial efficiency and economy purpose is achieved without any unfairness to the parties. The parties involved have agreed to the particular judge hearing the case because they have decided not to exercise their statutory right to file an affidavit of prejudice, which would have automatically removed the judge prior to any discretionary rulings in the case. Senate Bill Report, SJR 8207, 50th Legislature (1987); Official Voters' Pamphlet 9 (1987). Having already agreed to the judge hearing the case, the parties are required to continue before the previously elected judge under amendment 80. The amendment is particularly beneficial to judicial districts with few judges serving the district, and in cases that have been before the court for many years and would demand considerable time of the incoming judge to catch up. Official Voters' Pamphlet 8 (1987).

Broadly construing "retire" to include retirement by reelection defeat advances the purpose of the amendment to

promote judicial efficiency and economy. Nevertheless, Whirlpool argues the purpose of the amendment could not have been to empower defeated judges to continue judicial functions after the voters have removed the judge from office. However, our state constitution does not guarantee the right to a trial presided over by an elected superior court judge. *Belgarde*, 119 Wn.2d at 720-21. Moreover, this court has always made clear the source of the pro tempore's authority is not the electorate, but the consent of the parties. *Burton*, 105 Wn.2d at 351; *National Bank v. McCrillis*, 15 Wn.2d 345, 357, 130 P.2d 901, 144 A.L.R. 1197 (1942).

■ That the judge is voted out of office midway during complex litigation is not significant because a superior court judge pro tempore does not derive his or her authority from a general election. Rather, the consent that establishes the pro tempore's authority is actual consent, or, under amendment 80, the consent demonstrated by the parties at the beginning of the case when they chose not to file affidavits of prejudice. Thus, broadly construing "retire" to include previously elected judges who have been defeated at reelection not only advances the purpose of judicial efficiency and economy, but also is consistent with established Washington pro tempore law.

Additionally, we recognize the analysis and strict construction suggested by Whirlpool may encourage unsuccessful litigants to create delays, particularly during election years, in the hope that a judge who has made rulings adverse to them will be voted out of office and they may be able to change prior rulings. The months between the election of a new judge and the expiration of the defeated judge's term would be unmanageable if litigants felt they could get a second chance by prolonging the litigation until the newly elected judge took office.

Whirlpool cautions broadly construing retire to include defeated judges would allow a defeated judge to appoint himself or herself pro tempore in a case the judge wanted to retain even though the prior handling of that case contributed to his or her reelection defeat. However, there are

four conditions to the appointment of a judge pro tempore: (1) the person is a member of the bar; (2) the appointment is agreed upon by the parties or their attorneys; (3) the appointment must be approved by the court; and (4) the appointee must take the oath provided by statute. *McCrillis*, 15 Wn.2d at 354. Amendment 80 only dispenses with the second requirement of the parties' consent. Under Const. art. 4, § 7 (amend. 80), the judge pro tempore who had been defeated at reelection would still be subject to the requirement of approval by the current court. In this case, Judge Thomas was selected and approved by the current court, Judge Burchard.

Therefore, we hold a previously elected superior court judge who loses reelection is retired for the purpose of Const. art. 4, § 7 (amend. 80). In applying this construction to the facts of this case, we hold that Judge Thomas is entitled to sit as judge pro tempore because he is retired for the purpose of amendment 80. We also note this case fits precisely the purpose of amendment 80. The case is 6 years old, and many issues are still not resolved. The parties previously agreed to have Judge Thomas hear the case; neither party filed an affidavit of prejudice. Judge Burchard found this case was extremely complicated and it would have taken him quite a while to become familiar with the case. At the same time, Okanogan County has only one superior court judge so the time spent catching up with the case would severely impact the County's limited judicial resources.

We affirm the trial court's denial of a motion to strike the order appointing Judge Thomas as judge pro tempore.

Andersen, C.J., and Utter, Brachtenbach, Dolliver, Smith, and Guy, JJ., concur.

Madsen, J. (dissenting) — Because the majority ignores the right of the electorate to decide who will be judge and who will not, I respectfully dissent.

Rather than giving the term "retire" its "common, ordinary meaning", the majority has expanded its meaning to

include judges who have been effectively terminated by the electorate. To most, the word "retire" generally connotes a voluntary leaving of office or a leave in accordance with mandatory retirement limits. Webster's dictionary lists definitions to this effect: "to withdraw, go away, or betake oneself" and "to withdraw from office, a public station, business, occupation, or active duty". *Webster's Third New International Dictionary* 1939 (1986). "Withdraw" is defined as "[t]o disengage or remove (oneself), as from an office". *Webster's Third New International Dictionary* 2626 (1986). Webster's defines "retired" as "withdrawn from active duty or business". *Webster's Third New International Dictionary* 1939 (1986). The definition the majority cites in support — "to cause to retire" — does not negate this conclusion, arguably implying mandatory retirement. Moreover, Gifis' law dictionary notes that the term "retire" refers to the "voluntary withdrawal from office, a public station, business, or other employment". Steven H. Gifis, *Law Dictionary* 419 (3d ed. 1991). Black's defines "retirement" as follows: "[t]ermination of employment, service, trade or occupation upon reaching retirement age, or earlier at election of employee, self-employed, or professional". Black's Law Dictionary 1316-17 (6th ed. 1990).

A useful analogy can also be made here to the well-known differences between the terms of "retired" and "terminated" or "discharged" in an employment context. *See, e.g., Jacobs v. New Jersey State Hwy. Auth.*, 54 N.J. 393, 397, 255 A.2d 266 (1969) ("Retirement from employment has a connotation different from discharge. The former ordinarily signifies voluntary withdrawal, the latter compulsory dismissal."); *International Ass'n of Machinists v. Electric Vacuum Cleaner Div., Gen. Elec. Co.*, 136 N.E.2d 167, 167 (Ohio C.P. 1949) ("In employee-employer relationships, 'retirement' includes some consent by the employee either at the inception or at some time during the course of . . . employment.").

Contrary to the majority's position, Const. art. 4, § 7 (amend. 80)'s legislative history and material in the official

voters pamphlet do not support the broad meaning of retirement suggested by the majority. The voters pamphlet describes the then current law as preventing a judge leaving office *"for retirement or any other reason"* from functioning as a superior court judge without the consent of the parties. (Italics mine.) Official Voters' Pamphlet 8-9 (1987). However, in explaining how the proposed amendment would operate, the pamphlet *only* discusses judges leaving for "retirement" and does not suggest that the amendment would ameliorate the then current law applicable when judges leave office for "any other reason". Amendment 80 itself, as codified, only mentions "retired" judges as well: "[h]owever, if a previously elected judge of the superior court *retires* leaving a pending case in which the judge has made discretionary rulings, the judge is entitled to hear the pending case as a judge pro tempore without any written agreement". (Italics mine.) Const. art. 4, § 7 (amend. 80). If the Legislature had wished to extend this provision beyond voluntarily or statutorily retired judges, it could have done so very easily by using either of the terms "leaving office" or "former" to describe the judge. The Legislature did not. Nor did the voters, in passing the proposal, agree upon more than an amendment for judges leaving by reason of retirement.

The circumstances surrounding the amendment's proposal and passage also suggest a much narrower meaning of "retirement" than the majority assigns the term. The majority notes that the amendment evolved from the circumstances of the judge who had been presiding over a complex case facing an "upcoming, scheduled retirement" which would have required him to get the consent of the parties, any of whom could have withheld consent. Thus, the amendment was built upon the circumstances of a judge retiring by choice or by law and not having been voted out of office.

Stating that a judge's authority is derived from consent not a general election, the majority claims that its conclusion is in keeping with established pro tempore law because both parties had an opportunity to use an affidavit of prej-

udice against Judge Thomas and neither exercised that option. The majority argues that this evidences the parties' consent to have Judge Thomas hear the case. However, the majority overlooks the fact that each party is only entitled to one affidavit in one action under RCW 4.12.050 and that the parties may not have used their affidavits for a number of reasons. These include maintaining relations with the few judges in a small county or having already exercised the one allowed affidavit. Moreover, the majority overlooks the fact that the parties are limited to one affidavit of an elected judge but may refuse any number of pro tempore judges. For these reasons, the fact that an affidavit of prejudice is not filed should not be deemed to be consent sufficient to satisfy Const. art. 4, § 7 (amend. 80).

The majority further justifies its holding by arguing that it is in keeping with the efficiency policies behind amendment 80. While I agree that judicial efficiency is important, I cannot agree that these concerns should supersede the fundamental rights of the electorate to choose who shall sit and get paid for sitting on the bench. The majority's holding will allow a terminated judge to be "construed" back on to the bench for what may be years on the county's payroll, contrary to the clearly articulated wishes of the electorate.

For the reasons discussed above, I would instead hold that the "common, ordinary meaning" of "retire", the history and language of amendment 80, and principles of democracy, require that a judge who is voted out of office does not fall within the exception to Const. art. 4, § 7 (amend. 80) and therefore, should not be allowed to act as a judge pro tempore without the parties' consent.

DURHAM, J., concurs with MADSEN, J.