Sue Byington, Chair Citizens' Commission on Salaries for Elected Officials P. O. Box 43120 Olympia, WA 98504-3120
Dear Ms. Byington:
By letter previously acknowledged, you have requested our opinion on the following question:
 In developing a salary schedule pursuant to article XXVIII of theWashington Constitution and RCW 43.03.300-.310, may the Salary Commissionconsider economic and budgetary issues?
For the reasons set forth more fully below, we conclude that the Commission has the discretion to determine how, or whether, economic and budgetary issues affect the appropriate level of state officer salaries.
 ANALYSIS
The Washington Citizens' Commission on Salaries for Elected Officials is established, pursuant to the state constitution, to establish salary schedules for members of the Legislature, elected officials of the executive branch, and state court judges. Const. art. XXVIII, § 1. The constitution describes it as an "independent" body but otherwise does not prescribe the standards or practices the Commission is to use in setting salaries.
Washington voters approved the establishment of the Commission in 1986. Amendment 78. Prior to that time, salaries for these officials were determined by the Legislature. AGO 1994 No. 8, at 2 (citing former Const. art. XXVIII, § 1). The purpose of amending the constitution to establish the Commission, as explained in the official Voters' Pamphlet,[1] was to give an independent citizens' commission, rather than the Legislature, the authority to set salaries for elected officials. Voters Pamphlet 12 (1986) ("Statement for" House Joint Resolution 49).
The constitution does not directly state what standards the Commission can or should use in setting salaries, beyond using the word "independent" to describe the Commission. Const. art. XXVIII, § 1. The statutes enacted to implement the constitutional provision and to organize the Commission similarly provide only minimal guidance as to what the Commission may or may not consider. RCW 43.03.300-.310.
The statutes begin with a legislative statement proclaiming a "policy of this state to base salaries of elected state officials on realistic standards in order that such officials may be paid according to the duties of their offices and so that citizens of the highest quality may be attracted to public service." RCW 43.03.300. The Legislature has further explained that the establishment of the Commission is designed to remove "political considerations" from the salary process. Id.
The standard the Commission is to apply is stated in general terms in RCW43.03.310. That statute begins by providing that the Commission shall "study the relationship of salaries to the duties of [the applicable elected offices] and shall fix the salary for each respective position." RCW 43.03.310(1).[2]
The legislative history underlying the constitutional and statutory provisions adds little or no additional specificity.[3] The Voters Pamphlet materials accompanying Amendment 78 simply stressed the independent nature of the Commission. The ballot title and summary used the word "independent" a total of five times. Voters Pamphlet 12-13 (1986). The "Statement for" the amendment stressed both its independent nature and its citizen composition, and it additionally repeated the statutory preference for "realistic standards" and disdain for "political considerations". Id. at 12. The legislative history behind the implementing statutes reiterated terms set forth directly in the statutes but set forth no further detail as permissible criteria. Final Legislative Report, 49th Leg., Reg. Sess. (1986), at 43-44; bill files for SHB 1331 (1986) in the collection of the Washington State Archives.
The applicable statutes begin with a declaration of public policy, RCW43.03.300, followed by a substantive provision that describes the manner in which the Commission is to proceed. RCW 43.03.310. When the Legislature prefaces a substantive statute with a statement of purpose, that declaration does not have independent operative force but serves as an important guide in understanding the intended effect of substantive sections of the statute. Hartman v. Washington State Game Comm.,85 Wn.2d 176, 179, 532 P.2d 614 (1975); see also In re Detention ofR.W., 98 Wn. App. 140, 145, 988 P.2d 1034 (1999). Consistent with these case authorities, we conclude that RCW 43.03.300 does not directly govern the conduct of the Commission and certainly should not be regarded as providing it with an exclusive list of standards, but it does help to explain the operative language of RCW 43.03.310.
The operative statute provides that the Commission shall "study the relationship of salaries to the duties of [the applicable elected offices] and shall fix the salary for each respective position." RCW43.03.310. The Legislature's declared purpose in creating the Commission is to "remov[e] political considerations in fixing the appropriateness of the amount of such salaries." RCW 43.03.300. Further, the declared policy is to base salaries on "realistic standards" in order that officials "may be paid according to the duties of their offices". Id. This legislative declaration of purpose and policy reinforces the operative section that the salaries are to be set based upon the relationship between the salary levels and the duties of office. However, in declaring a purpose of "removing political considerations" from the salary setting process, we find nothing by the Legislature prohibiting the Commission from considering economic conditions generally, and in state government specifically, as they affect that relationship.
The term "political considerations" is not defined and may have widely varying meanings depending on context. Reviewing the legislative history here, it appears that the "political interests" the Legislature had in mind in enacting the statute and putting the constitutional amendment before the people was to distance the salary setting process from the very elected officials whose salaries are to be set by the Commission.See Voters Pamphlet 12-13 (stressing the "independent" nature of the Commission and its citizen composition); see also In re Randolph,101 N.J. 425, 433, 502 A.2d 533, 537 (1986) (describing the policy of encouraging an independent judiciary in terms of, inter alia, "free[dom] from all ties with political interests, free[dom] from all fears of reprisal or hopes of reward"); Marshall Cy. Bd. of Educ. v. State TenureComm., 291 Ala. 281, 280 So.2d 130, 133-34 (1973) (state statute prohibiting termination of teachers' employment for "political reasons" meant termination based on political party membership, voting or political preference in any political race, a teacher's candidacy for public office, or similar political activity). There is no apparent reason in this legislative policy that would preclude the Commission from taking economic and budgetary circumstances into consideration, provided, of course, that it is done without a view to electoral politics or consequences.
The legislative declaration of policy also refers to "realistic standards". RCW 43.03.300. Like the use of the term "political considerations" in the policy statement, this phrase may help to enlighten the operative statutory directive to base salaries upon the duties of the respective offices. See Hartman, 85 Wn.2d at 179. The statement explains that the Commission is to use "realistic standards" in light of the objective of attracting "citizens of the highest quality" to public office. RCW 43.03.300. In any particular salary setting context, the Commission may draw the conclusion that the overall state of the economy and budgetary circumstances may influence the determination of "realistic standards". Nothing in either the applicable statutes or the constitution prohibits the Commission from acknowledging these circumstances in an assessment of the levels at which the salaries should be fixed.[4] The basis for the Commission's decision must remain the relationship of salaries to the duties of the offices, which is the substantive statutory touchstone. See RCW 43.03.310(1).
Based upon the requirement that the Commission study the relationship of salaries to the duties of an office, the Legislature evidently expected that the results of these studies would determine, in some way, the Commission's salary-setting decisions. The statute stops short of expressly setting forth any exclusive list of factors that the Commission can consider as relevant to the relationship between salaries and duties. The Commission's constitutional independence from the political process underscores that the Commission has some discretion to decide which factors to consider, given the broad general standards set forth in the statute, and how to weigh these factors in making any particular salary-setting decision.
For these reasons, we conclude that there is nothing which precludes the Commission, if it chooses, from considering economic and budgetary circumstances in developing a salary schedule. We trust that this analysis will be helpful.
Sincerely,
 JAMES K. PHARRIS Senior Assistant Attorney General
[1] "In interpreting a constitutional amendment, the court . . . examines legislative history and material in the official voters' pamphlet." Zachman v. Whirlpool Fin. Corp., 123 Wn.2d 667, 671,869 P.2d 1078 (1994).
[2] The other section governing the Commission, RCW 43.03.305, deals only with the composition of the Commission. Two provisions of that section reinforce the independent nature of the Commission: (1) a provision that the Governor cannot remove members of the Commission during their terms; and (2) a prohibition on certain people with arguably vested interests serving on the Commission. RCW 43.03.305(4), (5). The constitution also includes the latter limitation. Const. art. XXVIII, § 1.
[3] Washington courts turn to legislative history, among othersources, for assistance in construing an ambiguous statute. Harmon v.Dep't of Social and Health Serv., 134 Wn.2d 523, 530, 951 P.2d 770
(1998). We accordingly have reviewed the legislative bill files (accessioned into the Washington State Archives) for HJR 49 of 1986 (which the voters approved as Amendment 78) and for the bills by which the Legislature enacted RCW 43.03.300-.310, including later amendments. The Legislature initially enacted the implementing statutes at the same legislative session at which it referred Amendment 78 to the ballot. Laws of 1986, ch. 155 (conditioned upon the approval of the constitutional amendment). The Legislature has amended the statutory provisions several times since then, but none of those amendments specifically relate to the standard to be applied in developing a salary schedule.
[4] We note that at the federal level, consideration of general pay schedules for federal employees is one factor the Citizens' Commission on Public Service and Compensation is to consider in making annual recommendations of appropriate salary increases for various high-level federal officials. These include members of Congress, the Vice-President, cabinet members, and federal judges. The Commission is explicitly instructed to consider both the appropriate pay levels and relationships between and among such offices and positions covered by such review and the appropriate pay relationships between such offices and positions and the offices and positions subject to the general pay schedules for federal employees. 2 U.S.C. § 356(i), (ii). This statute reflects the congressional judgment that one aspect of appropriate pay relationships for such officials takes into account the relationship between the duties and the pay of other public employees.